IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MONNIE VILLARREAL**                                               **PLAINTIFF**

**v.**                                                Civil No. 1:24-cv-99-HSO-BWR

**VITALCORE, et al.**                                     **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [61]; GRANTING DEFENDANTS SHERIFF JOHN LEDBETTER, GENEVA DRUMMOND, AND VITALCORE'S MOTIONS [41], [43] FOR SUMMARY JUDGMENT; AND DENYING AS MOOT PLAINTIFF MONNIE VILLARREAL'S MOTION [57] TO AMEND**

In this pro se prisoner case brought under 42 U.S.C. § 1983, United States Magistrate Judge Bradley W. Rath's Report and Recommendation [61] recommends that Defendants Sheriff John Ledbetter, Geneva Drummond, and VitalCore's Motions [41], [43] for Summary Judgment be granted, that Plaintiff Monnie Villarreal's Motion [57] to Amend be denied as moot, and that the Court dismiss this case without prejudice for failure to exhaust administrative remedies. After thoroughly reviewing Plaintiff Monnie Villarreal's Objection [63] to the Report and Recommendation [61],[1] the Report and Recommendation [61], the record, and relevant legal authority, the Court finds that Plaintiff's Objections [63], [64] should be overruled and that the Magistrate Judge's Report and Recommendation [61] should be adopted as the opinion of the Court. Plaintiff Monnie Villarreal's claims

---

[1] Plaintiff also a filed a Supplement [64] to his Objection which the Court has reviewed and considered. *See* Supp. [64].

against all Defendants should be dismissed without prejudice for failure to exhaust administrative remedies.

## I. BACKGROUND

A. <u>Factual Background</u>

Plaintiff Monnie Villarreal ("Plaintiff") pled guilty to conspiracy to commit insurance fraud in the Circuit Court of Jackson County, Mississippi, and was sentenced to serve five years in the custody of the Mississippi Department of Corrections ("MDOC"). R. & R. [61] at 2. Plaintiff's sentence was suspended, and he was ordered to serve it on post-release supervision, subject to certain conditions. *Id.* at 3. Plaintiff violated the terms of his post-release supervision in 2020, and he was ordered to serve three years in MDOC custody, followed by two years of post-release supervision subject to the same conditions originally imposed. *Id.* But in 2024 Plaintiff again violated the terms of his post-release supervision, and he was ordered to serve the remainder of his sentence in MDOC custody, where he remained until his release in December 2024. *Id.*

Plaintiff was incarcerated at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi, between February 6, 2024, and April 26, 2024, when the events giving rise to this lawsuit occurred. Hr'g Tr. [56] at 9. His allegations stem from two incidents, an alleged denial of medical care and a purported failure to protect Plaintiff from violence at the hands of another inmate, supposedly in retaliation for filing this lawsuit. R. & R. [61] at 3. Plaintiff

originally named as Defendants VitalCore and Nancy Unknown,[2] a nurse practitioner, *see* Compl. [1] at 1-2, but was subsequently granted leave to add Defendants Sheriff John Ledbetter ("Sheriff Ledbetter") and Geneva Drummond ("Drummond") as parties to this suit, Order [14] at 1-2.

Plaintiff brings claims under 42 U.S.C. § 1983, asserting that Defendants VitalCore and Nancy Unknown committed "attempted murder" by depriving him "of [a] proper dosage of insulin[,]" by not allowing him "to see a license[d] doctor[,]" and by forcing him to "live with high blood sugar." Compl. [1] at 4. Plaintiff claims he was given an "overdose of insulin" on February 16, 2025, and his "blood sugar went from 240 to 64 in two hours[.]" *Id.* at 4-5. He states that he had to "bang on [his] cell door for help[,]" *id.*, and that due to this incident his "kidneys are failing" and his "eyes are damaged[,]" Letter [32] at 1.

Plaintiff accuses Sheriff Ledbetter and Drummond of "negligence and cruel punishment." Mot. [10] at 1. He asserts that he was assaulted by another inmate with a "broken wooden mop handle" on April 21, 2024, and that Drummond refused to answer his calls for help. Mot. [11] at 1. He contends that Drummond's refusal to respond "was an act of retaliation for VitalCore" as "[s]he was also aware that

---

[2] Nancy Unknown has never been served with process, despite the Court sending a Notice of Lawsuit and Request to Waive Service of a Summons to Defendant VitalCore's counsel. R. & R. [61] at 1 n.2. Counsel advised that "VitalCore . . . does not have, and did not have during the relevant time period, a nurse practitioner providing services at [JCADC] . . . with the first name 'Nancy' or any first name remotely similar to 'Nancy.'" Resp. [23] at 1. Plaintiff has since been warned that "[i]t is [his] responsibility to prosecute this case, including identifying Nurse Practitioner Nancy Unknown's name and location for service of process." Order [24] at 1. Plaintiff has been unable to do so. *See* Resp. [9] at 2 ("I do not know Nurse Practitioner Nancy's last name.").

3

[Plaintiff] planned to file a suit against Vitalcore[.]"[3]  *Id*.  Plaintiff claims that he sued Sheriff Ledbetter for "his lack of oversight over his jail[,]" but he does not allege that Sheriff Ledbetter was personally involved in any of these incidents.  Hr'g Tr. [56] at 32-33.

In his Complaint [1], Plaintiff claims he filed a grievance "on the kiosk[.]"  Compl. [1] at 7.  Defendants have submitted documentation outlining JCADC's grievance process and what claims Plaintiff filed.  *See* Mots. [41], [43].  JCADC's Director, Jeremy Skipper ("Skipper"), has testified that the JCADC Inmate Handbook explains the grievance procedure to be followed and is readily available to all inmates, Skipper Aff. [41-1] at 1, and he has attached an excerpt of the JCADC Inmate Handbook, *see id*. at 3-4.

The JCADC Inmate Handbook states that "[i]nmates may file a grievance when subject to a criminal act by another inmate, a prohibited act by a staff member, abuse or harassment, a violation of civil rights, or denial of common privileges without cause."  *Id*. at 3.  "Inmates should file these grievances by using the inmate request system," and "[t]he form should clearly describe the problem and include a detailed account of the circumstances which led to the grievance."  *Id*.  Relevant here, the JCADC Inmate Handbook states that "[i]nmates who have been sentenced to the Mississippi Department of Corrections also have access to the Administrative Remedy Program."  *Id*. (emphasis in original omitted).  Inmates are advised that instructions for filing a grievance through the Administrative Remedy

---

[3] Plaintiff had already filed suit against Defendant VitalCore at the time this alleged incident took place.  *See* Compl. [1].

Program ("ARP") are provided upon request, and that the ARP should only be used after the inmate utilizes the normal JCADC grievance process. *Id.* The ARP instructions direct that a grievance through that system must be made within thirty days of the complained-of incident, and that "[i]nmates will be required to use this program before they proceed with a lawsuit." Ex. [41-3] at 1.

Plaintiff filed three grievances during his incarceration at JCADC, all of which were submitted through the normal JCADC grievance system. On February 25, 2024, he reported that

> [o]n Friday 16th of February nurse practitioner forced me to take 30 units of insulin that brought my sugar down to 60 and could have put me in a diabetic coma…or stay in suicide watch…norma levels of insulin are 80 to 120…my blood sugar is in the 200s everyday…morning and night…undermedicating me is just as bad as over medicating…I am asking to see a doctor and do blood work to get this under control…

Ex. [43-4] at 4 (errors and omissions in original). Plaintiff was advised that this message would be forwarded to the medical department and that his medication would be adjusted. *Id.*

Then, on April 23, 2024, Plaintiff complained of the incident involving Drummond, whom he referred to as "Corporal Deets[,]" stating that

> corpral deets had ahabd in the incident on april 24th 2024 if you roll the camr bak to count time you can hear williams say ther will be a slip and fall i ran tp the button on da room wllfor Help but was ignored fearingfor my life after it was pver williams was n the room wfere he broke hisarm corpral deets pkain ignored my cy for hejp[.]

Skipper Aff. [41-1] at 5 (errors in original). Plaintiff was informed that the "[i]ssue has been brought to Investigators['] attention[.]" *Id.* Thirty minutes later, Plaintiff submitted a third grievance, asking "how can i be busted back with no drugs in my

5

syztem[?]" *Id.* (errors in original). This grievance was answered the next day with a statement that "[y]ou did test positive sir. You will not be a[n] inmate worker again or at least not for a very long time." *Id.*

Plaintiff did not submit any grievance through the ARP. *See* Cooley Aff. [41-4] at 2. Joseph Cooley ("Cooley"), who is the custodian of the Administrative Remedy Program for MDOC at the South Mississippi Correctional Institution ("SMCI"), has testified that MDOC prisoners held at JCADC "have access to the MDOC ARP process to file requests for administrative remedy, also called grievances, related to conditions or events at the jail." Cooley Aff. [43-1] at 1. Cooley continued that ARP grievances filed by JCADC inmates would come to his office at SMCI. *Id.* Cooley swore under penalty of perjury that the ARP records do not contain any "complaint of any conditions or events at JCADC" that were submitted by Plaintiff on or after February 16, 2024. *Id.*

B. Procedural History

Plaintiff filed suit against Defendants VitalCore and Nancy Unknown on March 28, 2024. *See* Compl. [1]. He later filed two Motions [10], [11] to Amend Complaint on June 20, 2024, seeking to add Sheriff Ledbetter and Drummond as Defendants, *see* Mots. [10], [11], which were granted, *see* Order [14]. In January 2025, Defendants filed Motions [41], [43] for Summary Judgment, seeking dismissal of all claims as to all Defendants because Plaintiff had not exhausted his administrative remedies. *See* Mot. [41], [43]. Plaintiff then filed a Motion [57] to Amend Complaint on March 24, 2025. *See* Mot. [57]. These Motions [41], [43], [57]

6

are fully briefed, *see* Resps. [46], [47], [48], [58]; Replies [50], [55], [60], and the Magistrate Judge recommends that the Court grant the Motions [41], [43] for Summary Judgment and deny the Motion [57] to Amend Complaint as moot, *see generally* R. & R. [61].  Plaintiff has filed an Objection [63] and Supplement [64] to Objection to the Report and Recommendation [61].  *See* Obj. [63]; Supp. [64].

1.  <u>The Magistrate Judge's Report and Recommendation [61]</u>

The Magistrate Judge recommended that Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").  R. & R. [61] at 10.  The Report and Recommendation [61] highlighted that under the PLRA, "[e]xhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983." *Id.* (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).  Thus, an inmate must exhaust all grievance processes available to him; here that means both the JCADC grievance process and MDOC's ARP grievance process.  *Id.* at 12.  Because Plaintiff had not filed any grievances related to the alleged incidents through the ARP, the Magistrate Judge found that Plaintiff had not exhausted his administrative remedies as to either of his claims.  *Id.* at 13-14.

The Report and Recommendation [61] addressed each of the four arguments Plaintiff raised in response to the Motions [41], [43] for Summary Judgment.  *Id.* at 14-20.  First, Plaintiff asserted that he was not a convicted prisoner but was instead a pretrial detainee during his stay at JCADC, such that the "'MDOC ARP

procedures did not apply' to him during the relevant timeframe." *Id.* at 14 (quoting Resp. [46] at 1). The Magistrate Judge determined that Plaintiff was incarcerated for violating the terms of his post-release supervision, meaning that because he was not in jail on a new offense but on an old conviction, he was a convicted inmate at the time the complained-of incidents occurred. *Id.* at 14-15.

Second, Plaintiff argued that he did not have access to the ARP grievance system. *Id.* at 15. The Magistrate Judge noted that Plaintiff had not shown that any of the circumstances articulated by the Supreme Court of the United States as examples of when a grievance system is unavailable were present here, nor had he otherwise "shown that MDOC's ARP was incapable of use by an ordinary prisoner." *Id.* at 15-16 (quotations omitted). Instead, Plaintiff claimed that he was not informed of the requirement to file an ARP grievance and that the kiosk at JCADC was disabled on April 23, 2024, which obstructed his ability to access the ARP. *Id.* But according to the Report and Recommendation [61], the record showed that Plaintiff authored multiple kiosk submissions on April 23, 2024, and that even if the kiosk was disabled then, Plaintiff had already filed suit, making any potential use of the kiosk on that day irrelevant to the exhaustion analysis. *Id.* at 16-17. As for Plaintiff's lack of knowledge of the exhaustion requirement, the Report and Recommendation [61] cited the JCADC Inmate Handbook, which is readily available to inmates and describes the administrative remedies available to Plaintiff, including the ARP grievance system. *Id.* at 17.

8

Third, Plaintiff contended that Affidavits [41-4], [43-1] provided by LeTresia Stewart ("Stewart") and Cooley should be discredited because they allegedly failed to mention an ARP grievance Plaintiff filed on December 12, 2024. *Id.* The Magistrate Judge agreed with Plaintiff as to the Stewart Affidavit [41-4] because Stewart testified that Plaintiff did not file "any grievances through the CMCF [ARP] . . . from April 21, 2024[,] to December 27, 2024[,]" *id.* at 17-18 (quoting Stewart Aff. [41-4] at 1), and Plaintiff submitted proof he had filed an ARP grievance on December 12, 2024, *id.* However, the Magistrate Judge rejected Plaintiff's argument as to Cooley's Affidavit [43-1] because Cooley merely testified that "Plaintiff submitted no administrative grievances through MDOC's ARP '*regarding a complaint of any conditions or events at JCADC.*'" *Id.* at 18 (emphasis in original) (quoting Cooley Aff. [43-1] at 1). And the grievance Plaintiff filed on December 12, 2024, concerned a mail room issue and did not contradict Cooley's testimony. *Id.* Plaintiff also argued that Cooley's testimony lacked personal knowledge and was conclusory, but the Magistrate Judge disagreed because the content of Cooley's Affidavit [43-1] demonstrated his personal knowledge of the ARP grievance system and set forth specific facts to support his testimony. *Id.* at 19.

Fourth, Plaintiff claimed that he notified relevant custodians about the incidents he complains of, and that their failure to act justified excusing the exhaustion requirement. *Id.* The Report and Recommendation [61] addressed this argument by noting that "simply 'putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement[,]'" *id.* (quoting *Evans v. Harrison*

9

*Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at *1 (S.D. Miss. Feb. 28, 2020)), and that absent some clear showing that administrative remedies were unavailable or otherwise incapable of use, the Court "lacks discretion to excuse a failure to exhaust administrative remedies," *id.*

Turning to the Motion [57] to Amend Complaint, the Magistrate Judge recommended that the Court deny the Motion [57] as moot because the entire action should be dismissed without prejudice. *Id.* at 20-21.

2. <u>Plaintiff's Objections [63], [64]</u>

Plaintiff raises six Objections to the Report and Recommendation [61]. *See* Obj. [63]; Supp. [64]. In his first three Objections, he reiterates the argument that he is a pretrial detainee and thus is not subject to the relevant exhaustion requirements. Obj. [63] at 1-2. In addition to the authority cited in his Objection [63], Plaintiff has filed a Supplement [64] to the Objection [63] which references more legal authority that supposedly supports this position. *See generally* Supp. [64] at 1-2. Plaintiff contends that as a pretrial detainee, he "was not sentenced to MDOC during the period in question, and therefore, the additional ARP requirement should not apply." Obj. [63] at 2. He also maintains that the Court should reject the Report and Recommendation [61] because neither the Magistrate Judge nor Defendants cite any Fifth Circuit or Supreme Court precedent in response to this argument. *Id.*

In his Fourth and Sixth Objection, Plaintiff takes the position that "Courts have repeatedly held that when a jail or prison responds to a grievance by treating

it as a medical request or sick call and processes it through the medical system, the inmate has exhausted all available administrative remedies." *Id.* Plaintiff requests that the Court do the same here because once his grievances were answered, "no further administrative steps were available or required" and "[t]his process fully satisfies the exhaustion requirement[.]" *Id.* at 2-3.

Finally, in his Fifth Objection, Plaintiff "clarifies" his argument that the kiosk was unavailable on April 23, 2024, by claiming that although he was able to submit grievances on that day, the access was only temporary and he was later "locked out of the kiosk system and remained unable to submit further grievances until leaving the facility on Friday, April 26, 2024." *Id.* at 3. Plaintiff continues that this supports his "position that administrative remedies were not 'available' as required by the PLRA." *Id.*

## II. DISCUSSION

A. Relevant Legal Authority

1. Review of the Report and Recommendation [61]

Where a plaintiff has submitted a written objection to a magistrate judge's report and recommendation, a court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). In conducting a de novo review, the district court makes its "own determination based upon the record and unrestrained by the findings and conclusions of the magistrate." *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989).

However, the Court is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993). As to those portions of a report and recommendation to which a defendant does not make objections, a court applies "the clearly erroneous, abuse of discretion and contrary to law standard of review." *Wilson*, 864 F.2d at 1221 (quotation omitted).

A district court "need not consider frivolous, conclusive, or general objections." *Gooding v. Colvin*, No. 1:15-cv-20-LG-RHW, 2016 WL 660932, at *2 (S.D. Miss. Feb. 18, 2016) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)). "Moreover, where the objections are repetitive of the arguments already made to the Magistrate Judge, a de novo review is unwarranted." *Id.* (citing *Koetting*, 995 F.2d at 40). "Instead, the report and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir. 2005)); *see also Hernandez v. Livingston*, 495 F. App'x 414, 416 (5th Cir. 2012); *Jackson v. Berryhill*, No. 1:17-cv-48-LG-JCG, 2018 WL 4046512, at *1 (S.D. Miss. Aug. 24, 2018); *Robertson v. Berryhill*, No. 1:16-cv-295-HSO-JCG, 2018 WL 1336054, at *2 (S.D. Miss. Mar. 15, 2018). Also, "[i]t is well-settled that [p]arties filing objections must specifically identify those findings objected to." *Bradley v. Shaw*, No. 2:18-cv-196-TBM-LGI, 2022 WL 908932, at *2 (S.D. Miss. Mar. 28, 2022) (quoting *Battle*, 834 F.2d at 421) (quotation omitted).

2. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence is viewed in the light most favorable to the non-movants with all reasonable inferences drawn in their favor." *United States Sec. & Exch. Comm'n v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017). If the movant carries this burden, to defeat summary judgment "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the non-moving party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

3. The PLRA's Exhaustion Requirement

"Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). "The PLRA requires prisoners to exhaust 'such administrative remedies as are available' prior to filing a § 1983 action regarding prison conditions." *Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016) (quoting 42 U.S.C. § 1997e(a)). The United States Supreme Court has held that § 1997e's exhaustion "language is 'mandatory.'" *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [any special] circumstances into account." *Id.*

"[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.*

The United States Court of Appeals for the Fifth Circuit has explained that "[t]he prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted." *Cowart*, 837 F.3d at 451. The Fifth Circuit takes a "strict approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must exhaust available remedies *properly*." *Id.* (emphasis in original) (quotation omitted).

B.    Analysis

1.    Objections One, Two, Three, and Supplement [64] to Objection

These four Objections, which argue that Plaintiff is a pretrial detainee and that the ARP was unavailable to him, are mere repetitions of arguments made before the Magistrate Judge, and should only be reviewed for clear error. *See Gooding*, 2016 WL 660932, at *2; *see also* Resp. [46] at 1-2; Resp. [47] at 2; Resp. [48] at 1-2. Having conducted that review, the Court finds that these Objections should be overruled for the same reasons outlined in the Report and Recommendation [61]. *See* R. & R. [61] at 14-15.

Even if the Court conducted a de novo review, it would reach the same result. Plaintiff argues that individuals held pending a probation revocation hearing are pretrial detainees who do not have access to ARP grievance procedures. Obj. [63] at 1. Plaintiff cites a litany of cases he claims support his position, but after a

thorough review of the caselaw he has provided, the Court is unable to find any authority stating that an inmate awaiting a probation revocation hearing is treated as a pretrial detainee.[4] *See id.* at 1-2; Supp. [64] at 1-2. In fact, one case Plaintiff cites appears to indicate the opposite. *See Gerstein v. Push*, 420 U.S. 103, 121 n.22 (1975) (differentiating that case, which dealt with pretrial detainees, from other Supreme Court precedent dealing with inmates awaiting a probation revocation hearing); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (pointing out that "the revocation of parole is not a part of a criminal prosecution"); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.").

      Simply put, Plaintiff was not a pretrial detainee facing a new conviction, but was instead a post-conviction inmate serving out the remainder of his sentence. *See McColister v. NFN Casto*, No. 2:99-CV-0171, 2001 WL 34124760, at *2 (N.D. Tex. July 6, 2001) ("At the time of the incident, plaintiff had been convicted of a crime and was back in jail on probation violation for failing to register as a sex offender. Consequently, it is clear plaintiff was not in jail on a new offense but on his old

---

[4] Indeed, it appears that Plaintiff may have fabricated some quotations from some of these cases. *See* Obj. [63] at 1-2. For example, he claims that the Fifth Circuit stated in *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996), that "[p]retrial detainees are those who have been charged with a crime but who have not yet been tried on the charge. This includes those detained after arrest and before a new conviction, such as probation and parole violators." Obj. [63] at 1. The Court has thoroughly reviewed *Hare*, and this purported statement, or one of similar substance, does not appear in that opinion. *See generally Hare*, 74 F.3d at 635-50. The Court reminds and cautions Plaintiff that he is bound by Federal Rule of Civil Procedure 11(b), which requires that "[a] party certifies that to the best of the person's knowledge, . . . formed after an inquiry reasonable under the circumstances: . . . [the] legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(2).

15

conviction and, for purposes of this analysis, was a convicted prisoner at the time of the incident."), *report and recommendation adopted sub nom. McColister v. Castro*, No. 2:99-CV-0171, 2001 WL 34124759 (N.D. Tex. July 25, 2001). Moreover, Defendants have provided substantial summary judgment evidence that Plaintiff was under the jurisdiction of MDOC and could access the ARP, and he has offered no competent evidence to show the contrary. *See Opinion of the Attorney General (Black)*, 1989 WL 503520, at *1 (Miss. A.G. Nov. 1, 1989) ("Once the defendant is placed on probation, he is, according to § 47–7–33, under the supervision of the Department of Corrections. A careful reading of § 47–7–33 reveals that violation of the probationary conditions does not remove the defendant from that supervision. Rather, the defendant remains under Department of Correction's supervision until further action is taken by the court."); Cooley Aff. [43-1] ("MDOC prisoners who are being held in a county jail have access to MDOC ARP process to file request for an administrative remedy, . . . related to conditions or events at that jail.").

Therefore, even under a de novo review, the record demonstrates that Plaintiff was not a pretrial detainee and that he did have access to the ARP during the time these events occurred. His first three Objections and Supplement [64] to Objection should be overruled.

2.  Objections Four and Six

Plaintiff claims that other courts have held that when a grievance is treated and responded to as a medical request, all available administrative remedies have been exhausted. Obj. [63] at 2-3. But Plaintiff only cites out-of-circuit authority to

support this contention, which is merely persuasive authority. *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001) (highlighting that out of circuit authority is persuasive, not binding authority). And none of the cases cited by Plaintiff support his position. Those decisions are easily distinguishable because they either dealt with a *Bivens* claim, *see Vega v. United States*, 881 F.3d 1146, 1154 n.4 (9th Cir. 2018) (discussing a Supreme Court's decision that had held that ARP is an inadequate alternative remedy for *Bivens* claims based upon a failure to give proper medical care because the PLRA at the time the Supreme Court released that decision only applied to § 1983 claims (citing *McCarthy v. Madigan*, 503 U.S. 140, 151 (1992)),[5] or addressed facts under the relevant administrative procedures for the individual prisons in other states, which differ from the procedures used by MDOC, *see Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1211-16 (11th Cir. 2015) (holding that a plaintiff may have exhausted any available administrative remedies under "Georgia's prison grievance procedures"); *Brown v. Valoff*, 422 F.3d 926, 236-240 (9th Cir. 2005) (finding a plaintiff exhausted his administrative remedies under the California Department of Corrections grievance system).

In other words, those cases have no relevance to whether Plaintiff exhausted the MDOC grievance procedures for his § 1983 claims here. *See Cowart*, 837 F.3d at 451 ("The prison's grievance procedures, and not the PLRA, define the remedies

---

[5] The Supreme Court has since held that the PLRA's exhaustion requirements apply to *Bivens* actions. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (highlighting the substantial revisions made to the PLRA in 1996).

17

that are available and must thus be exhausted."). The JCADC Inmate Handbook required Plaintiff to use the JCADC grievance system and then the ARP grievance system before filing a lawsuit. *See* Skipper Aff. [41-1] at 2-4. The ARP was available to Plaintiff, and he has never maintained or argued that he used it to report the complained-of incidents. These Objections should be overruled.

3.   Objection Five

Objection Five maintains that the ARP was unavailable because Plaintiff was locked out of the kiosk system on April 23, 2024. Obj. [63] at 3. The Magistrate Judge already addressed this argument. R. & R. [61] at 16-17. As such, the Court need only conduct a clear error review, and having done so, finds that it should be overruled for the same reasons stated in the Report and Recommendation [61]. *See id.* Even under a de novo review, the Court would still overrule this Objection because April 23, 2024, was almost a month after Plaintiff had filed this lawsuit, and thus, even if the kiosk was unavailable, that is irrelevant to whether Plaintiff exhausted his administrative remedies prior to filing suit. *See Patterson v. Stanley*, 547 F. App'x 510, 512 (5th Cir. 2013) ("Exhaustion must be completed prior to filing suit; it may not be excused if exhaustion is achieved while the suit is pending.").

### III.   CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Monnie Villarreal's Objection [63] and Supplement [64] to Objection to the Report and Recommendation [61] of United States Magistrate Judge Bradley W. Rath,

18

entered in this case on May 1, 2025, are **OVERRULED**, and the Report and Recommendation [61] is **ADOPTED** in its entirety as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants Sheriff John Ledbetter, Geneva Drummond, and VitalCore's Motions [41], [43], for Summary Judgment are **GRANTED**, and Plaintiff Monnie Villareal's claims are **DISMISSED WITHOUT PREJUDICE** as to all Defendants for failure to exhaust administrative remedies.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Monnie Villarreal's Motion [57] to Amend Complaint is **DENIED** as moot.

**SO ORDERED AND ADJUDGED**, this the 18th day of June, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE